**UNITED STATES**
v.
**LINDSTROM et al.**
**Cr. Nos. 17117, 17118.**

United States District Court
E. D. Pennsylvania.
July 22, 1954.

W. Wilson White, U. S. Atty., Philadelphia, Pa., G. Clinton Fogwell, Jr., Norman Kron, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

Cornelius C. O'Brien, Joseph F. McVeigh, Edward J. Mingey, Jr., Philadelphia, Pa., for defendants.

CLARY, District Judge.

Defendants, father and son, were charged in two separate indictments, each containing three counts, with wilfully and knowingly attempting to defeat and evade income taxes alleged to be due the United States of America for the calendar years 1947, 1949 and 1950. The indictments were laid under Section 145(b) of the Internal Revenue Code, 26 U.S.C. § 145(b). Following pleas of not guilty, the cases were tried together and under date of December 21, 1953, a jury returned verdicts of guilty on all counts as to both defendants. No motions were filed for new trial, but a motion for judgment of acquittal was filed in each case, which motions are before the Court for disposition.

While many witnesses were called on behalf of the Government as to individual transactions involving the partnership of A. Lindstrom & Son, the substance of the case as presented to the jury involved the testimony of only two witnesses, Mrs. Regina Lindstrom, the daughter-in-law and sister-in-law respectively of the two defendants, and Clement W. Bowen, a Certified Public Accountant. The evidence disclosed that for many years Mrs. Regina Lindstrom had been bookkeeper for S. A. Lindstrom & Son. The defendants were engaged in business at Lansdowne, Pennsylvania, as structural steel erectors, and they also engaged in the business of construction equipment rental.

The only bank accounts which were incorporated in the books of the company as kept by Mrs. Regina Lindstrom reflected deposits in the Lansdowne National Bank in an account entitled "S. A. Lindstrom & Son", an account of Samuel A. Lindstrom, Sr., in the same bank, and an account in the Clifton Heights National Bank, Clifton Heights, Pennsylvania, in the name of S. A. Lindstrom, which latter account was used solely for the purpose of depositing withholding and social security taxes deducted from payrolls. The evidence disclosed that in addition thereto S. A. Lindstrom, Sr., maintained a personal account with the Corn Exchange National Bank, Philadelphia, Pennsylvania, and one with the Ventnor City National Bank, Ventnor, New Jersey. For many years one Frank Deady had handled the accounting affairs of the Lindstroms and had made up their tax returns. It was the custom of Mrs. Lindstrom to turn over all her books and records to Mr. Deady for the purpose of making up tax returns and whatever other necessary information, if any, was supplied to Deady by the Lindstroms. The returns for the years in question were prepared by Mr. Deady and his name appears on the returns. In February of 1951

Deady was contacted by two agents of the Internal Revenue Service with respect to the returns of the Lindstroms for the years in question. On May 31st of that year, Deady sustained a very serious cerebral hemorrhage and a stroke, as a result of which he was incapacitated both physically and mentally to the extent that not only was he unable to testify at the trial but following that date was unable to even intelligently discuss the matters involved with the Revenue Agents. Thereupon, Mr. Bowen was retained by the defendants to represent them and he started work in August of 1951 to compile figures to determine their tax liability. For some months he conducted an investigation of the books and took off preliminary figures on the basis of there being only three bank accounts, the two accounts in the Lansdowne National Bank and the account in the Clifton Heights National Bank. He was unable to obtain any satisfactory accounting picture until sometime in November when the younger Lindstrom advised him of the existence of the other two accounts with the Corn Exchange National Bank and the Ventnor City National Bank. He was then able from all of the records, including the bank records of these two additional accounts, to obtain a complete accounting picture so that his figures substantially agreed with the data which had already been compiled by the Revenue Agents. The data as finally compiled by Bowen and testified to at the trial presented the following picture:

### As to S. Lindstrom & Son (Partnership)

| Year | Income reported on return | Income as established by all records (based on Bowen's examination) |
|---|---|---|
| 1947 | $25,644.03 (loss) | $75,906.00 |
| 1949 | $34,707.36* | $55,613.76 |
| 1950 | $17,909.74 | $48,226.65 |

*Note—No partnership return filed in 1949.
Figure taken from individual returns.

### As to S. A. Lindstrom, Sr.

| Year | Net taxable income reported on return | Tax paid | Net income subject to tax (based on Bowen's examination) | Tax due |
|---|---|---|---|---|
| 1947 | $12,822.02 (loss) | None | $37,577.04 | $16,935.28* |
| 1949 | $17,353.68 | $2,446.98 | $23,806.88 | $ 5,879.02* |
| 1950 | $ 8,059.39 | $ 908.08 | $20,113.34 | $4,811.98* |

### As to S. A. Lindstrom, Jr.

| Year | Net taxable income reported on return | Tax paid | Net income subject to tax (based on Bowen's examination) | Tax due |
|---|---|---|---|---|
| 1947 | $12,822.01 (loss) | None | $33,863.30 | $15,932.43* |
| 1949 | $17,353.68 | $3,291.76 | $25,006.88 | $ 6,335.00* |
| 1950 | $ 8,059.38 | $1,148.34 | $21,313.31 | $ 5,226.94* |

*Note—The tax liability for the income determined by Bowen was testified to by an Internal Revenue Agent after making allowance for all claimed and other deductions and exemptions allowed by the Internal Revenue Code.

There was considerable testimony presented by the Government of individual transactions relating to the business of the defendants and their conduct of it. This evidence disclosed that the defendants were engaged in the steel erecting business, that they owned a considerable amount of heavy equipment, that they used that equipment not only on their own steel erection jobs but maintained a rental service of the equipment to other persons and firms. Their business transactions were extensive and some of the contracts involved many thousands of dollars. Since they were lump sum contracts awarded by bid it was necessary for the defendants to work from architect plans and to make their own material and cost estimates. The fact that the defendants were accustomed to deal directly and personally with contracts involving substantial sums of money and that they were familiar with their own contracts is rather clearly established by that testimony.

The schedules of actual taxable income and the returns filed graphically outline the wide discrepancy between actual taxable income and the amount of such income as reported in the partnership and individual returns for the three years in question. All of the returns filed indicate a net operating profit on the part of the partnership for the three years in question of only $26,973.07. Bowen's examination revealed net operating profits for the same three years of $179,746.41, a discrepancy of some $152,773.34. Lindstrom, Sr., in his individual returns for the three years reported taxable income of $25,413.07 as against real taxable income as determined by Bowen of $81,497.26, an understatement of $56,084.19. He paid taxes of $3,355.06, whereas, the true tax liability was established at $27,626.28. Lindstrom, Jr., paid taxes of $4,440.10, whereas, the true tax liability was established at $27,484.37. The income as calculated by Bowen for the year 1947, when contrasted with the income shown on the return, shows a difference of $101,550.03 for that single year. The understatement of taxable income for 1947 was $75,906, the understatement of taxable income for 1949 was some $20,000 and the understatement of taxable income for 1950 was some $30,000. Of course, only roughly one-half of that was attributable to each of the defendants.

In passing upon the motions of the two defendants for judgment of acquittal, the only question for the trial judge to determine is whether there is substantial evidence in the record which taken in the light most favorable to the United States would permit the jury to find the defendants guilty beyond a reasonable doubt. Bell v. United States, 4 Cir., 185 F.2d 302, 310. The possibility that a jury may have a reasonable doubt upon the evidence as to the guilt of the defendant is not the criterion which determines the action of the trial judge, Bell v. U. S., supra. Whether there is such substantial evidence can be determined only within the four corners of the entire record. Admittedly, and from the lips of defendants' own employee and agent, it has been established that there was a very substantial, the term gross might even be applied, understatement of income. That fact as evidence of intent in and of itself is not conclusive, Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418; L. Glenn Switzer, v. C. I. R., 20 T.C. 759; Nicholson v. C. I. R., 32 B.T.A. 977, 989. Defendants in their excellent brief have in substance argued that that is not an important factor. I disagree, because in order for the Government to prevail in an income tax evasion there must be proof of a substantial tax liability which has not been satisfied, U. S. v. Schenck, 2 Cir., 126 F.2d 702, certiorari denied Moskowitz v. United States, 316 U.S. 705, 62 S.Ct. 1309, 86 L.Ed. 1773; Tinkoff v. United States, 7 Cir., 86 F.2d 868, 878, certiorari denied 301 U.S. 689, 57 S.Ct. 795, 81 L.Ed. 1346. What then are the other elements from which the jury might conclude beyond a reasonable doubt that in filing these several returns, the defendants were motivated, at least

in part, by the willful tax evasion motive. An important element which the jury could have considered and which was proved by direct testimony was the incomplete and rather incomprehensible method of bookkeeping employed by the defendants. The Government established beyond peradventure of doubt that originally the firm had only three bank accounts, the two in the Lansdowne National Bank and the one in the Clifton Heights National Bank. Adequate books and records from which tax liability might be determined were kept based on these three accounts. However, two other accounts were established, one in the Corn Exchange National Bank and one in the Ventnor National Bank, in which accounts were deposited partnership funds. The proceeds of business transactions were channeled through those accounts and no record was given to the only bookkeeper keeping the only books of record of the partnership. Lindstrom, Sr., maintained charge of all the records of these two accounts. That such a system would show a distorted picture of the partnership transactions is also definitely established from the testimony of the defendants' own accountant, Bowen. His testimony clearly establishes that he vainly endeavored to reconcile the business transactions of the partnership for the years in question with the first three accounts and was unable by that method to establish a complete accounting picture of the transactions involved. It was only after he had been informed, some three months after he actually started work, by the younger Lindstrom, of the existence of these two accounts that he was able to properly audit the activities of the partnership. Then it was that Bowen was able to determine the true taxable income picture. Then it was that Bowen's findings substantially corroborated the independent investigation already made by the Internal Revenue Agency. A failure to keep proper records may be considered by the jury in determining the element of willfulness in a tax evasion case. The defendants attempt to minimize the effect of this testimony by placing great reliance on the volunteered statement of Mrs. Regina Lindstrom, the bookkeeper, that the information about the two bank accounts was given to Deady by Lindstrom, Sr. Unfortunately, her testimony in that regard does not establish as a fact that Lindstrom ever gave any information about the accounts to Deady. The net effect of her testimony is that whatever information Deady had about these accounts had to come from the Lindstroms because she knew nothing about them herself. Whether Deady ever received any information about them or knew of their existence is in the state of the record extremely doubtful. In the present state of the record nobody has stated positively that Deady was informed of the existence of these bank accounts. Defendants also place reliance upon certain cases, Nicholson, supra, Estate of C. S. Bradington v. C.I.R., 12 T.C.M. 1482, L. Glenn Switzer v. C.I.R., supra, and others, wherein the Tax Court of the United States had held in civil actions that the Government had not sustained its burden of proving fraud in the making of a return. These cases in substance differ considerably from the present cases. From the rather scanty factual recital contained in the opinions it would appear that the person being charged had wide and varied business transactions over which the taxpayer exercised rather casual supervision, or that the taxpayer had a bona fide doubt as to his tax liability. Here, there was a relatively tight integrated business enterprise with the details of which both defendants were completely familiar and both exercised managerial control over the affairs of the business. There is not a scintilla of evidence which suggests there was any question as to the taxability of the unreported income. From the directly proved facts the jury could have found beyond a reasonable doubt that in making the returns, the defendants from the knowledge possessed by virtue of their activities in the business did know whether their operations were profitable or not and that the substantial under-

statement of income and consequent tax liability was made for the purpose of defeating and evading a tax properly and legally due. We are not dealing here insofar as this record shows with other than highly experienced, substantial, and successful businessmen. It taxes ordinary credulity that these two defendants would not know, particularly in the year 1947, that they had enjoyed a successful business year. Conceding arguendo that it might take some real accounting work to determine exact profits, from the facts directly proved in the record, the jury could well have concluded and beyond a reasonable doubt that the defendants signed their 1947 as well as returns for other years knowing the same to be false and for the purpose of evading taxes.

In sum, we have here a case where the Government has established a large tax deficiency which in its final analysis, as the case was presented, was obtained directly from books, records, checks and checkbooks maintained by the defendants and in the possession of the defendants. We have testimony of what might be charitably characterized as a peculiar system of keeping records which method of keeping records would permit a distortion of true earnings and consequent apparent diminution and concealment of tax liability. We have the picture of two capable businessmen who admittedly dealt in and with substantial sums of money. There was a failure to promptly disclose important bank accounts to their own accountant. Taking all of these factors and facts into consideration I do not feel that the inferences to be drawn from them would not permit a finding by the jury of the presence of the element of a willful and intentional tax evasion motive in the filing of their tax returns. It is for the jury and not for the court to determine from all the facts whether or not the tax evasion motive played a part in the actions of these defendants. The jury has found that it did and after a full and complete charge to which no exception was taken. At the conclusion of the case it was the opinion of the Court that sufficient facts had been established which would permit the jury to find that the understatement of income was the result of a calculated effort on the part of the defendants to defeat and evade their income tax liability. A review of the record has not changed my opinion. It was a jury question, properly submitted, and the verdicts of the jury as rendered will stand.