UNITED STATES of America
v.
Samuel Andrew **LINDSTROM**, Jr.,
Appellant.

UNITED STATES of America
v.
Samuel Andrew **LINDSTROM**, Sr.,
Appellant.

Nos. 11508, 11509.

United States Court of Appeals
Third Circuit.

Argued April 7, 1955.

Decided June 3, 1955.

Rehearing Denied in No. 11509
June 27, 1955.

Joseph F. McVeigh, Philadelphia, Pa.
(Edward J. Mingey, Jr., Francis J. Myers, Cornelius C. O'Brien, Philadelphia, Pa., on the brief), for appellants.

W. Wilson White, Philadelphia, Pa., for appellee.

Before MARIS, and HASTIE, Circuit Judges, and WILLSON, District Judge.

MARIS, Circuit Judge.

The defendants, Samuel Andrew Lindstrom, Senior, and Samuel Andrew Lindstrom, Junior, were found guilty by a jury in the District Court for the Eastern District of Pennsylvania of wilfully and knowingly attempting to defeat and evade income tax for the years 1947, 1949 and 1950 in violation of section 145 (b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 145(b). They both moved for judgments of acquittal in the District Court which were denied. Each has appealed to this court asserting that the evidence was insufficient to support the jury's finding of wilful intent to defeat and evade the tax. The facts are fully stated in a careful opinion filed in the district court by Judge Clary. 122 F. Supp. 518. It is sufficient here to say that the Government's testimony, which was not controverted by the defendants, established the following significant facts:

The defendants, father and son, were equal partners in a business in Lansdowne, Pennsylvania, known as S. A. Lindstrom & Son, involving the erection of structural steel. They also engaged in the rental of construction equipment and

the sale of such equipment. In carrying on their business the defendants used five bank accounts, two in the Lansdowne National Bank, one in the Clifton Heights National Bank in Clifton Heights, Pennsylvania, one in the Corn Exchange National Bank in Philadelphia, and one in the Ventnor National Bank in Ventnor, New Jersey. All of these accounts were carried in the individual name of Lindstrom, Senior, except one in the Lansdowne National Bank which was carried in the firm name.

The defendants customarily deposited the receipts of the steel erection business in the firm account in the Lansdowne National Bank and in the account in the Clifton Heights National Bank, the deposits in the latter account being of funds to be disbursed as payroll taxes. Most of the receipts from the rental of equipment were deposited in Lindstrom, Senior's, individual account in the Lansdowne National Bank. Some of these receipts, however, and receipts from the sale of equipment were deposited in Lindstrom, Senior's, individual accounts in the Corn Exchange National Bank and the Ventnor National Bank.

Prior to 1941 the accounts of the firm were kept by Frank Deady, an accountant. In that year the firm employed Regina Lindstrom, the widow of a deceased son of Lindstrom, Senior, as bookkeeper and she kept such accounts as were kept during the period here in question. These consisted of cash receipts and disbursements, accounts payable and payroll books for the steel erection business reflecting the transactions included in the firm bank account in Lansdowne and the individual bank account in Clifton Heights. In addition the bookkeeper kept in the check books of Lindstrom, Senior's, individual account in the Lansdowne National Bank a record of the equipment rentals deposited in that account. The bookkeeper also when directed to do so by Lindstrom, Senior, made deposits of equipment rental and sales receipts in his account in the Corn Exchange National Bank but kept no records of that account and had nothing

whatever to do with his account in the Ventnor National Bank.

Deady, the accountant who had formerly kept the books, continued to prepare the defendants' income tax returns during the years here in question. In this connection Mrs. Lindstrom furnished him with the books and records of the steel erection business which she kept and the check books covering the two accounts in the Lansdowne National Bank and the account in the Clifton Heights National Bank. She gave him nothing regarding the accounts in the Corn Exchange National Bank and the Ventnor National Bank, the information, if any, which Deady received regarding these accounts being furnished him by Lindstrom, Senior.

The Bureau of Internal Revenue commenced an investigation of the defendants' income tax liability in February 1951 and discussed the matter with Deady, who on May 31st suffered a cerebral hemorrhage and was thereafter unable to cooperate. The defendants in August, 1951 retained Clement W. Bowen, a certified public accountant, to assist in establishing their tax liability. When he started his audit Mrs. Lindstrom gave him the same records she had furnished Deady but did not tell him of the Corn Exchange and Ventnor accounts. It was not until November 1951 that Bowen learned from Lindstrom, Junior, of those two accounts. He was then able to complete his analysis of the defendants' tax liability and his figures agreed substantially with those of the Bureau in indicating an understatement of partnership net income of approximately $100,-000 for 1947, $20,000 for 1949 and $30,-000 for 1950. These discrepancies were due partly to understatements of income and partly to overstatements of expense.

The charge made against these defendants is that they wilfully and knowingly attempted to defeat and evade income tax in violation of section 145(b) of the Internal Revenue Code of 1939. They strongly urge that the evidence established merely that their taxable income was understated in their returns but not

that they wilfully attempted to evade income tax thereby. Admittedly mere proof of understatement of taxable income without other evidence of wilfullness is insufficient to support a conviction under section 145(b). But we think that as to Lindstrom, Senior, there was in this case other evidence which was sufficient to support a finding by the jury that the understatement was wilful and knowing on his part. For here we have the evidence that a keen, experienced and successful business man withheld the receipts of a substantial portion of the business from being deposited in the bank account handled by the firm bookkeeper or entered by her in the business records which she kept and which were made available to the firm's accountant, Deady, for the preparation of income tax returns. Moreover the evidence is clear that these particular business receipts were deposited by Lindstrom, Senior, or at his express direction in two individual bank accounts of his own, of which the bookkeeper kept no record whatever, one of them in Philadelphia and the other in Atlantic County, New Jersey.

The defendants argue that the inference of wilfullness which might be drawn from these facts is negatived by evidence that Lindstrom, Senior, himself turned over to Deady the information with respect to these two bank accounts which was needed for the preparation of accurate income tax returns. We cannot agree that there was such evidence, however. The only evidence on the subject was that of Mrs. Lindstrom, the bookkeeper. As to the effect of her testimony we are in complete accord with the following statement by Judge Clary, 122 F. Supp. at page 522:

"The defendants attempt to minimize the effect of this testimony by placing great reliance on the volunteered statement of Mrs. Regina Lindstrom, the bookkeeper, that the information about the two bank accounts was given to Deady by Lindstrom, Sr. Unfortunately, her testimony in that regard does not establish as a fact that Lindstrom ever gave any information about the accounts to Deady. The net effect of her testimony is that whatever information Deady had about these accounts had to come from the Lindstroms because she knew nothing about them herself. Whether Deady ever received any information about them or knew of their existence is in the state of the record extremely doubtful. In the present state of the record nobody has stated positively that Deady was informed of the existence of these bank accounts."

■■ Deady was, as we have said, physically incapacitated from testifying. The only other possible witness to the fact, Lindstrom, Senior, himself, did not testify. Under these circumstances the jury could fairly infer that the understatement of income by Deady in the returns which he prepared was the result of Lindstrom, Senior, not having given him the data he needed from the two outside bank accounts. The case as to Lindstrom, Senior, thus comes squarely within the rule, as recently restated by the Supreme Court in Holland v. United States, 1954, 348 U.S. 121, 139, 75 S.Ct. 127, 137, as follows:

"A final element necessary for conviction is willfulness. The petitioners contend that willfulness 'involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income.' This is a fair statement of the rule. Here, however, there was evidence of a consistent pattern of underreporting large amounts of income, and of the failure on petitioners' part to include all of their income in their books and records. Since, on proper submission, the jury could have found that these acts supported an inference of willfulness, their verdict must stand. Spies v. United States, * * * 317 U.S. [492] at 499–500, 63 S.Ct. [364] 368 [87 L.Ed. 418]."

As to Lindstrom, Junior, the case is quite different, however. For the evidence is that the equipment rental and sale portion of the business was carried on by his father and there is no evidence that he had anything whatever to do with the individual bank accounts of his father in which the receipts of those business activities were deposited. There is, therefore, in his case nothing more shown than that his returns understated his taxable income; not enough, as we have said, to support a finding of a wilful attempt to evade tax. His motion for a judgment of acquittal should therefore have been granted.

In No. 11,508 the judgment of the district court will be reversed and the cause remanded with directions to enter a judgment of acquittal.

In No. 11,509 the judgment of the district court will be affirmed.