NEWAYGO PORTLAND CEMENT COMPANY, PETITIONER, *v.* COMMIS_
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36319. Promulgated April 6, 1933.

*J. S. Seidman, Esq.*, and *F. E. Seidman, C. P. A.*, for the petitioner.

*Brooks Fullerton, Esq.*, and *John D. Kiley, Esq.*, for the respondent.

1104

OPINION.

BLACK: We will first discuss petitioner's contention that its sale of the hydroelectric plant to the Consumers Power Company took place in 1922, when it entered into a contract to sell, with the Commonwealth Power, Railway and Light Company and not in 1923, when the deed of conveyance was signed and delivered and payments were completed and the purchaser went into complete possession of the property.

The facts in relation to the transaction have been fully stated in our findings of fact and will not be repeated here. Suffice it to say, we think these facts show that the sale was completed in 1923, and that the Commissioner is correct in so treating it. While it is true that the seller and proposed purchaser entered into an executory contract of sale in 1922 and part of the proposed purchase price was paid in 1922, it was not until the deed passed, June 18, 1923, that the sale was consummated. Then it was that the purchaser went into complete possession of the premises and exercised all elements of ownership. Up until that time the seller operated the power plant and used the energy generated therein in the production of its manufactured products, continued to sell some of the surplus power to the village of Newaygo and collected therefor and retained the proceeds in its business. Petitioner in its income tax return for 1923 deducted depreciation on the power plant and equipment computed on the basis of ownership in petitioner to the date of the passing of

the deed. These things were inconsistent with the idea that ownership passed from petitioner to the Commonwealth Power, Railway and Light Company at the time of the execution of the contract, October 16, 1922. True it is that after the contract of sale was executed in October, 1922, the purchaser came upon the premises and began the erection of a substation and the making of other improvements on the premises, but this was by the agreement of the parties embodied in the contract of sale and was merely permissive and is not inconsistent with the idea that petitioner remained the owner of the property until the deed passed in June, 1923.

In *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11, the question before the United States Supreme Court was whether a sale of timber lands occurred in 1916 or 1917. There the seller on December 27, 1916, gave the buyer a ten-day option to purchase for a specified price. On the same day title was examined and found satisfactory to the buyer, who was solvent and able to make the purchase. The buyer arranged for the money needed, and on December 30, 1916, notified the seller that it would exercise the option. On that day the seller ceased operations and withdrew all its employees from the land. On January 5, 1917, the papers which were required to effect the transfer were delivered, the purchase price was paid, and the transaction was finally closed. In holding that the sale in question occurred in 1917, the Supreme Court said in part:

An executory contract of sale was created by the option and notice, December 30, 1916. In the notice, the purchaser declared itself ready to close the transaction and pay the purchase price " as soon as the papers were prepared." Respondent did not prepare the papers necessary to effect the transfer or make tender of title or possession or demand the purchase price in 1916. The title and right of possession remained in it until the transaction was closed. Consequently unconditional liability of vendee for the purchase price was not created in that year. [Citations.] The entry of the purchase price in respondent's accounts as income in that year was not warranted. Respondent was not entitled to make return or have the tax computed on that basis, as clearly it did not reflect 1916 income.

On authority of *Lucas* v. *North Texas Lumber Co.*, *supra*, we hold that the title and right of possession to the hydroelectric plant remained in petitioner until the transaction was closed in 1923 and it was then that the sale was consummated and the profits, if any, were taxable. Cf. *E. K. Wood Lumber Co.*, 25 B. T. A., at page 1024.

We will next take up petitioner's contention that even though the Board holds that the sale took place in 1923, nevertheless there was no taxable profit on the transaction because the March 1, 1913, value of the property after being adjusted to allow for additions made since that date to the date of sale, and to give effect to accumulated depreciation on the depreciable assets, was greater than the total price received for the property.

Much testimony was introduced on the subject of March 1, 1913, value, and there was a wide difference of opinion between the witnesses. One witness for respondent who was widely experienced in the valuation of utilities, testified that the March 1, 1913, value of the property was $206,000 and a witness for petitioner, who appeared equally as widely experienced, placed the valuation as high as $652,150. This witness based his valuation on $200,000 for the tangibles and $452,150 for the intangibles connected with the hydroelectric plant. We do not think there would be any profit in discussing the details of this evidence.

The fair market value of assets at any given date is a question of fact to be decided upon all the evidence admitted and no set rules, methods or formulas are controlling. *Huron Building Co.*, 15 B. T. A. 1107; affd., 53 Fed. (2d) 575; certiorari denied, 53 Fed. (2d) 575; 287 U.S. 632; *Keystone Steel & Wire Co.*, 16 B. T. A. 617; affd., 62 Fed. (2d) 458. From all the evidence we have found that the March 1, 1913, value of the entire hydroelectric plant, including tangibles and intangibles, was $375,000. This should be the basis used in computing petitioner's gain or loss, if any, on the sale in 1923. This basis should of course be adjusted down to the date of sale by giving effect to additions made to the plant from March 1, 1913, and also by giving effect to depreciation which had accumulated against the depreciable assets since March 1, 1913. As to additions made to the plant since March 1, 1913, and the rate of depreciation on the depreciable assets, there seems to be no controversy between the parties and hence we have made no findings of fact on those items.

Petitioner's third contention is that even though the Board should hold that the sale was made in 1923 and that there was a taxable profit therefrom, nevertheless such profit should be taxed on the installment basis. It is petitioner's position that the sale price was received in two years, viz., $45,000 in 1922 and $405,000 in 1923, and that since the $45,000 initial payment is less than 25 per cent of the contract price, only 90 per cent of the profit can be taxed in 1923, as 10 per cent (45/450) is attributable to 1922, under sections 1208 and 212 (d) of the Revenue Act of 1926. In *Warren National Bank*, 22 B. T. A. 759; affd., 61 Fed. (2d) 325, the Board decided adversely a contention similar to that now made by petitioner. Following that decision we hold against petitioner on this issue.

Petitioner's fourth and last contention is that it not only does not owe any deficiency, but that on the contrary it has made an overpayment of its taxes for 1923 because it failed to deduct $41,230.79 which it should have accrued upon its books as an interest liability on December 31, 1923, but which it did not accrue because of error on its part. We find no basis for this contention.

When petitioner agreed to purchase from the Manitowoc Portland Cement Company $1,500,000 of its bonds at a purchase price of $1,320,000, it was embodied in the agreement that all the purchase price should not be paid at once but that petitioner should advance it in installments as the work progressed on the Manitowoc Company plant. But inasmuch as the bonds of the Manitowoc Company which were delivered to petitioner drew interest from the date of said bonds, June 2, 1923, it was agreed that the Newaygo Company would enter on its books, whenever it made payment of an installment, a credit to the Manitowoc Company representing the amount of interest at 7 per cent per annum on the amount of each installment paid by the Newaygo Company reckoned from June 2, 1923, to the date of such payment, and that the total amount of interest credits so entered should be paid by the Newaygo Company to the Manitowoc Company, when the new cement manufacturing plant of the latter company should have been fully erected and completed. Under the terms of this contract petitioner paid the Manitowoc Company two installments in 1923, upon which interest of $10,206.43 was calculated and credited to the Manitowoc Company on petitioner's books, December 31, 1923. This amount was not paid until October 15, 1924, but petitioner, keeping its books on an accrual system, was entitled to accrue this liability in 1923, as it did do, and respondent has so allowed.

But no other payments of installments were made by petitioner under the terms of the contract in 1923 and no liability to pay interest accrued against petitioner in 1923 other than the $10,206.43 which it accrued on its books and which the respondent has allowed as a deduction. Petitioner was not entitled to a larger accrual of interest in 1923 than that shown by its books. Interest liabilities of a taxpayer should be accrued when all events have occurred which fix time of accrual. Cf. *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290.

Under the terms of petitioner's contract with Manitowoc Company it could not tell what interest it would owe Manitowoc Company in any given year until the installments for that year were determined and paid. Consequently until such installment payments were made all events had not occurred which would enable petitioner to fix the time of its accrual of interest liabilities to the Manitowoc Company. On this issue we hold for respondent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

Love, dissenting: I heard this case and observed the witnesses who testified, and am convinced that the evidence clearly shows that the

value of the "Riparian Land, Water-Power Rights & Power-House Site Land" was $300,000, instead of $100,000, as determined by the respondent; and that the basis used by the respondent of $183,526.57 for the "Power House, Dam & Electric Meters" should not be disturbed, as petitioner has not questioned the correctness of such determination and the evidence offered by the respondent does not prove that he erred in that respect.