COMMISSIONER OF INTERNAL REVENUE v. SEGALL.

SAME v. TANT.

Nos. 8197, 8198.

Circuit Court of Appeals, Sixth Circuit.

Sept. 16, 1940.

Maurice J. Mahoney, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Don M. Harlan, of Detroit, Mich., for respondents.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

The Commissioner of Internal Revenue asserted deficiencies in respondents' taxes for the year 1932, on the theory that certain transactions that eventuated in the dissolution of the Silent Automatic Company constituted a sale of its assets to the Timken-Detroit Company, and that respondents are liable as transferees for taxes upon that part of the profit distributed to them as stockholders. The Board of Tax Appeals held, in accordance with respondents' contentions, that the transactions constituted a tax-free reorganization, and the Commissioner now petitions for review of that decision. On motion of the Commissioner and with respondents' consent, we ordered that the two cases be consolidated.

There is no dispute as to any material fact, and the parties have stipulated the bases upon which the taxes shall be computed in the event there was no reorganization. Respondents concede that they are transferees within the meaning of Section 311 (a) (1), (f), of the Revenue Act of 1932. 26 U.S.C.A.Int.Rev.Code, § 311 (a) (1), (f).

On October 2, 1931, the Timken-Detroit Company, a Michigan corporation, entered

into a "plan and agreement of merger, consolidation and reorganization" with the Silent Automatic Company, another Michigan corporation, with its officers and principal stockholders, respondents Segall and Tant, individually, and with the latter as its trustee. Silent Automatic agreed to transfer and Timken agreed to acquire all the assets of Silent Automatic, including those of its wholly owned subsidiary, Silent Automatic Sales Corporation, a Delaware corporation. The date fixed for the transfer was January 2, 1932. Silent Automatic agreed that prior to that date, the Sales Corporation would be dissolved, its assets distributed and its capital stock cancelled or redeemed. Timken agreed to assume, with three exceptions immaterial here, Silent Automatic's obligations, as of the date fixed for transfer, and to pay $2,100,000 as follows: $760,000 in cash to Tant, as trustee of Silent Automatic, upon execution of the agreement; a promissory note for $100,000 dated October 2, 1931, and maturing January 2, 1933, payable to Surprenant & Company, for their services as brokers; 5% gold debentures in the amount of $1,240,000, bearing interest from October 2, 1931, payable in five annual installments beginning January 2, 1933, and guaranteed by the Timken-Detroit Axle Company, an Ohio corporation, parent and sole owner of the Timken-Detroit Company. Until delivery, Silent Automatic agreed that it would conduct its business in the usual manner; that it would enter into no unusual contract or contract of employment running beyond January 2, 1932; that it would incur no liability except in the usual course of business; and that neither it nor the Sales Corporation would declare any dividends prior to delivery to Timken. Respondents and Silent Automatic also undertook to refrain from manufacture or sale of oil burn-

ers for a period of five years beginning January 1, 1932.

The first question presented is whether the agreement and the transaction pursuant thereto constituted a taxfree reorganization under Section 112 (b) (4) and (d) (1) of the Revenue Act of 1928 or 1932, 26 U.S.C.A.Int.Rev.Code, § 112 (b) (4), (d) (1).*

The definition of reorganization was identical in the Revenue Acts of 1928 and 1932, 26 U.S.C.A.Int.Rev.Acts, pages 379, and 513 and read, in part, as follows: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) * * *."

This definition has received judicial construction. The Supreme Court has held that the parenthetical clause must be read, in the light of the preceding terms, to effect the general purpose of the tax exemption, which contemplated a "real scmblance to a merger or consolidation." Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 260, 77 L.Ed. 428. The interest acquired in the transferee company must be definite and material and must represent a substantial part of the thing transferred. "This much is necessary in order that the result accomplished may genuinely partake of the nature of merger or consolidation." Helvering v. Minnesota Tea Co., 296 U.S. 378, 385, 56 S.Ct. 269, 272, 80 L.Ed. 284. Accordingly, it has been held essential to reorganization that there remain in the transferor or its stockholders a substantial and material continuity of interest in the property transferred. A transfer of all the

---

* "Sec. [§] 112. Recognition of gain or loss—

"(a) General rule. Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges solely in kind.— * * *

"(4) Same—Gain of Corporation. No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization. * * *

"(d) Same—Gain of Corporation. If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

"(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, * * *."

assets of one company to another for what amounts to a cash consideration is not a reorganization, but a sale, the gain on which, if any, is taxable. Pinellas Ice & Cold Storage Co. v. Commissioner, supra.

Respondents argue that their contention is supported by Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L. Ed. 284; Nelson Co. v. Helvering, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 821, and Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289. We disagree. In each of those cases, the transferor retained what Mr. Justice Roberts recently called a "proprietary interest in the enterprise," in the form of common or preferred stock. LeTulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 316, 84 L.Ed. 355. Interest of this nature was lacking in the instant case, the Silent Automatic having received only cash and debentures.

It is argued that the instant case is distinguishable from the Pinellas case, supra, and Cortland Specialty Co. v. Commissioner, 2 Cir., 60 F.2d 937, since the notes given the vendors therein ran for no more than three and one-half and fourteen months, respectively, whereas maturities of the debentures herein were spread over a period of five years. We are of the opinion that this distinction is immaterial.

We think the case at bar controlled by the decision of the United States Supreme Court in LeTulle v. Scofield, supra. In that case, LeTulle owned certain lands and irrigation properties and the Gulf Coast Irrigation Company, of which he was sole stockholder, owned certain other irrigation properties. The Gulf Coast Water Company entered into an agreement with LeTulle and the Irrigation Company that the latter would acquire LeTulle's properties and thereafter convey all its properties to the Water Company for $50,000 in cash and $750,000 in bonds, payable serially from January 1, 1933, to January 1, 1944. Expressing the view that a reorganization had not been consummated, Mr. Justice Roberts, after reviewing the decisions, said:

"We are of opinion that the term of the obligations is not material. Where the consideration is wholly in the transferee's bonds, or part cash and part such bonds, we think it cannot be said that the transferor retains any proprietary interest in the enterprise. On the contrary, he becomes a creditor of the transferee; and we do not think that the fact referred to by the Circuit Court of Appeals, that the bonds were secured solely by the assets transferred and that, upon default, the bondholder would retake only the property sold, changes his status from that of a creditor to one having a proprietary stake, within the purview of the statute.

"We conclude that the Circuit Court of Appeals was in error in holding that, as respects any of the property transferred to the Water Company, the transaction was other than a sale or exchange upon which gain or loss must be reckoned in accordance with the provisions of the revenue act dealing with the recognition of gain or loss upon a sale or exchange."

We think the transactions involved herein constituted a sale, and the Board of Tax Appeals erred in holding otherwise.

The Board of course did not consider when the sale took place, having erroneously reached the conclusion that there was none; and that question remains to be determined.

Respondents take the position that we must affirm the Board's decision of no tax liability in 1932, if we conclude from the facts found that the sale occurred in 1931; but they contend that we cannot reverse and remand with proper directions if our conclusion is that the sale occurred in 1932,—even though the question was briefed and argued to us, and all the relevant evidence was before the Board and is in the record here. We are unimpressed with this argument. Decision as to when the gain was realized requires construction of a written contract and the applicable statutes in the light of undisputed facts. The ultimate question, if not solely one of law, is at least a mixed question of law and fact, and may properly be decided by a reviewing court. Commissioner v. Southern Bell T. & T. Co., 6 Cir., 102 F.2d 397; Washburn v. Commissioner, 8 Cir., 51 F.2d 949.

We proceed to consider whether the sale occurred in 1931 or 1932.

There are no hard and fast rules of thumb that can be used in determining, for taxation purposes, when a sale was consummated, and no single factor is controlling; the transaction must be viewed as a whole and in the light of realism and practicality. Passage of title is perhaps the most conclusive circumstance. Brown Lumber Co. v. Commissioner, 59 App.D.C. 110, 35 F.2d 880. Transfer of possession is also significant. Helvering v. Nibley-

Mimnaugh Lumber Co., 63 App.D.C. 181, 70 F.2d 843; Commissioner v. Union Pac. R. Co., 2 Cir., 86 F.2d 637; Brunton v. Commissioner, 9 Cir., 42 F.2d 81. A factor often considered is whether there has been such substantial performance of conditions precedent as imposes upon the purchaser an unconditional duty to pay. Commissioner v. North Jersey Title Ins. Co., 3 Cir., 79 F.2d 492; Brunton v. Commissioner, supra; Case v. Commissioner, 9 Cir., 103 F.2d 283; United States v. Utah-Idaho Sugar Co., 10 Cir., 96 F.2d 756. See Options and Sale Contracts in Taxation, 46 Yale Law Jour. 272, 279.

In Lucas v. North Texas Lumber Co., 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668, a ten-day option to purchase timber lands was given to a solvent offeree on December 27, 1916. Having found the title satisfactory, the option holder on December 30 arranged for the money needed, gave notice of exercise of the option and declared itself ready to close the transaction and pay the purchase price "as soon as the papers were prepared"; and the offeror immediately ceased operating its saw mill and withdrew all its employees. Conveyance and payment of the purchase price followed on January 5, 1917. The vendor, reporting on the accrual basis, included the profit in its return for the year 1916. Mr. Justice Butler, holding this not proper, said: "Respondent did not prepare the papers necessary to effect the transfer or make tender of title or possession or demand the purchase price in 1916. The title and right of possession remained in it until the transaction was closed. Consequently unconditional liability of vendee for the purchase price was not created in that year. * * * The entry of the purchase price in respondent's accounts as income in that year was not warranted. Respondent was not entitled to make return or have the tax computed on that basis, as clearly it did not reflect 1916 income."

■ The situation is analogous in the instant case. An executory contract was made on October 2, 1931. Some of the purchase price was then paid and a promissory note for broker's commission given, but the Timken Company did not have an unconditional right to the execution of the documents transferring title until it delivered or tendered the promised debentures on January 2, 1932; nor had Silent Automatic an unconditional right to the debentures until it had delivered or tendered the bills of sale contemplated. It follows, we think, under the doctrine of the Lucas case, that for taxation purposes the sale herein did not occur until January 2, 1932. See Folkerts v. Marysville Land Co., 236 Mich. 294, 210 N.W. 231.

■ Moreover, we think this conclusion accords with the intention of the parties. An examination of the contract reveals that Silent Automatic agreed to transfer and Timken to acquire all of the former's assets, including those of the Sales Corporation "as of January 2, 1932." These concurrent obligations were to be performed "on January 2, 1932, or as soon thereafter as possible." Silent Automatic also agreed that it would "diligently conduct its business in the usual manner" until delivery, and Timken agreed to assume all notes and accounts payable as shown by the consolidated balance sheet of Silent Automatic and the Sales Corporation dated August 31, 1931, "together with those currently accruing from August 31, 1931, to the effective date of delivery." The common stockholders of Silent Automatic were informed that Timken would acquire the assets of Silent Automatic as of January 2, 1932, subject to its liabilities. The stockholders of the Timken-Detroit Axle Company were notified not only that Timken and Silent Automatic would merge on January 2, 1932, but that they would continue to operate separately until that time. We think the parties themselves have interpreted this agreement as contemplating consummation on January 2, 1932. Their interpretation is entitled to great, if not controlling, weight. Switzer v. Pinconning Lumber Co., 59 Mich. 488, 26 N.W. 762.

The cases of Newaygo Portland Cement Co. v. Commissioner, 27 B.T.A. 1097, affirmed 64 App.D.C. 278, 77 F.2d 536, and Nibley-Mimnaugh Lumber Co. v. Commissioner, supra, relied upon by respondents, are not inconsistent with the conclusion we have reached.

The judgment of the Board of Tax Appeals is reversed and the cause remanded for further proceedings in accordance with the views expressed herein.