Kenneth D. and Rose M. GRANT, Plaintiffs,

v.

James L. McCRORY, Defendant. Civ. No. 0426.

United States District Court D. Nebraska. June 27, 1958.

Robert B. Hamer and Charles A. Schorr (of Fitzgerald, Hamer, Brown & Leahy), Omaha, Neb., for plaintiff.

Deane E. McCormick, Jr., Department of Justice, Washington, D. C., and Robert H. Berkshire, Asst. U. S. Atty., Omaha, Neb., for defendant.

ROBINSON, Chief Judge.

This case presents the question whether the gain on the sale of Kenneth D. Grant's interest in the partnership of Grant Chevrolet Company and the income derived from such partnership from September 1, 1950, to the date of the sale should be reported and taxed in the plaintiffs' joint return for the calendar year 1950 or 1951. The answer to this question follows from a determination of the date of sale of the taxpayer's partnership interest. The Commissioner has ruled that Grant sold his interest in December, 1950; hence the income and gain were taxable in the 1950 income. The taxpayers disagree, contending that the sale occurred in 1951, and treat that as the proper year.

The taxpayers, husband and wife, reported their income on a calendar year cash basis for the years 1950 and 1951. Grant was a partner in Grant Chevrolet Company with his brother, Elno G. Grant, and George F. May. Their partnership was organized on January 1, 1950, for the purpose of operating an automobile dealership in Fremont, Nebraska. The partnership adopted a fiscal year basis, ending on August 31, for reporting its income. A partnership return was filed for the period from January 1, 1950, through August 31, 1950.

During the month of December, 1950, negotiations were carried on by the partners relative to the sale by Kenneth D. Grant of his interest in the partnership to the other partners. On December 4, 1950, he signed an instrument in which he declared that he proposed to sell his entire interest and holding in the partnership to his two partners effective as of midnight, January 1, 1951. On January 2, 1951, an agreement was entered into by the taxpayer and the other partners under which the taxpayer sold his interest in the partnership business effective as of midnight, January 1, 1951, for the consideration of a $9,000 note, the delivery of one 1951 Chevrolet automobile, the refunding of his capital investment in the partnership, and the paying over of his proportionate share of the earned and undistributed profits of the partnership up to December 31, 1950. Also on January 2, 1951, the taxpayer signed a release of all claims against the partnership in exchange for the stated consideration, and a notice of his withdrawal from the partnership was issued. The record reflects that thereafter small adjustments were made to correct inaccuracies in the amount distributable to the taxpayer.

The taxpayer's share of the partnership income from January 1, 1950, through August 31, 1950, was reported in a joint return for him and his wife for the calendar year 1950. The gain

from the taxpayer's sale of his partnership interest and the income of the partnership for the remaining period of his activity were reported in the joint return for the calendar year 1951. As previously indicated, based on a determination by the Commissioner that the taxpayer's withdrawal from and sale of his interest in the partnership had occurred in 1950, rather than 1951, a deficiency was assessed for that year. At the same time an overassessment was allowed the taxpayer for the year 1951, which was credited against the deficiency for the previous year. The balance was paid by the taxpayers and ultimately this suit was instituted.

Turning now to the merits, we must at the outset reject any idea that the written agreement on January 2, 1951, was, to quote from the Government's brief, "merely a formalization of an oral agreement previously had". The parties may have reached a definite understanding in 1950, but it does not follow that they had entered into an agreement by which the sale and withdrawal of the partnership interest were accomplished. The document of December 4th would demonstrate the inadequacies of such reasoning. Moreover, the "oral agreement", such as it was, could hardly be supposed to effect the desired agreement. But whatever the supposition, until a formal agreement was executed, there could be no alteration of the rights and obligations of the parties. Hence the January 2nd contract must govern our decision as to the date of the sale of the partnership interest. We find, and so hold, that the sale occurred in 1951.

This conclusion appears to be in accord with the understanding of the parties. The monies were not paid until January 2nd, title to the automobile was not conveyed until then, and the personal income tax returns for 1950 thereafter filed by each of the parties reported no income from the partnership after August 31, 1950. True, Elno G. Grant and George F. May subsequently amended their returns to report this income, but their decision could reasonably stem from other considerations. Both, then, by a practical construction given to the instrument and by the concomitant acts of the parties it can readily be seen that Kenneth D. Grant's withdrawal and sale were effectuated not earlier than midnight of January 1, 1951.

A subtle point is nevertheless raised by the Government. The litigants agree that a partner is taxed on partnership profits as those profits are ascertained by a partnership accounting at the close of an accounting period, and not on the basis of when the actual distribution is made to him. Section 182, Title 26 U.S. C.A., Internal Revenue Code of 1939, as amended; Guaranty Trust Co. of New York v. C. I. R., 303 U.S. 493, 498, 58 S.Ct. 673, 82 L.Ed. 975. While the close of the partnership's accounting period would ordinarily be determined by the date of sale, the Government contends that in this instance the accounting period was, however, foreshortened by the January 2nd agreement to December 31, 1950, which date must therefore be considered as the terminal point of the accounting period. In other words, the Government's theory is that, irrespective of the date when the contract was executed or when the partnership interest is considered withdrawn, if the profits are to be ascertained as of an earlier date, that date controls at least for the purpose of fixing the close of the accounting period.

The taxpayer objects to such reasoning, arguing that the prior cut-off date is "immaterial" in light of the agreement of the parties that the sale should occur as of midnight, January 1, 1951. We think the taxpayer is justified in taking issue with the Government's contention for, technically, its statement is inaccurate. The date fixed for the ascertainment of the taxpayer's partnership *interest* was not, by an agreement of the parties, determined on December 31, 1950. Paragraph numbered one of the agreement merely says that "in consideration of * * * the paying over to him of his proportionate share of the earned and undistributed profits of the

partnership up to December 31, 1950 inclusive" he would sell his interest in the partnership business. The distinction in the dates for calculating his profits and for terminating his interest may at first seem to lack any difference. But the transaction, as expressed in C. I. R. v. Segall, 6 Cir., 114 F.2d 706, 709, must be viewed as a whole and in the light of realism and practicality. As the taxpayer has demonstrated, the amount of profits distributable as of midnight, January 1st would be identical with what was shown on the books of the partnership as of the close of the last business day preceding it. This would be the earned and undistributed profits up to December 31, 1950. It seems to us superfluous to require the additional bookkeeping transaction when, in effect, one is carrying the identical figures forward to January 1st. But the partnership interest is not terminated until the later date. Under such circumstances, we cannot attach the significance to the discrepancy in dates which the Government urges. Thus, aside from the obvious practicality of the course chosen, which would suggest a meaningful distinction by itself, we feel there is a substantial difference between them for the additional reason that the earlier date concerns itself only with the matter of undistributed profits while the later is directed to the severance and sale of the interest in toto.

We are not unmindful of the tax advantage accruing to Grant as a result of our finding that the partnership extended into the calendar year 1951. By the operation of Section 188, title 26, U.S. C.A., Internal Revenue Code of 1939, the income is placed in a more favorable year. But the contract is not vitiated by the innuendo of tax avoidance, the motive being perfectly proper and not without a certain element of attractiveness. As the taxpayer succinctly puts it: "the only question we have is, do the facts indicate that what the parties intended to do was actually done?" We are persuaded that the partnership interest was terminated as of midnight, January 1, 1951, and, for the purpose of tax computation, the partnership accounting period was not closed before then.

This Memorandum will serve, unless counsel request otherwise, as the findings of fact and conclusions of law herein. Plaintiffs should prepare and submit a suitable order granting their prayer for judgment within twenty days.