PATRICK G. OLSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Olson v. Commissioner
Docket No. 8020-90
United States Tax Court
T.C. Memo 1991-325; 1991 Tax Ct. Memo LEXIS 374; 62 T.C.M. (CCH) 146; T.C.M. (RIA) 91325; July 16, 1991, Filed *374 Decision will be entered for the petitioner. Patrick G. Olson, pro se. J. Michal Nathan, for the respondent. NAMEROFF, Special Trial Judge. NAMEROFF
MEMORANDUM OPINION This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180 et seq. [1]
Respondent determined a deficiency in petitioner's 1985 Federal income tax in the amount of $ 3,958. The sole issue for consideration is whether petitioner is the owner, for tax purposes, of certain real estate in Loveland, Colorado, and is therefore entitled to deduct a loss incurred in connection with the rental of the premises. In the notice of deficiency, respondent also disallowed the claimed rental loss on the grounds that petitioner did not establish that he was carrying on a bona fide rental business entered into for profit and that petitioner failed to establish that the expenses claimed were incurred, or if incurred, were for ordinary and necessary business purposes. However, respondent's pretrial memorandum and opening statement only refer to the ownership issue. Accordingly, we conclude that respondent has abandoned these other issues. In any event, the record contains sufficient information *375 from which the Court can conclude that petitioner was engaged in renting the premises for profit and did substantiate the bulk of the expenses claimed. Some of the facts have been stipulated and the stipulation and attached exhibits are incorporated herein by this reference. Petitioner resided in California at the time of the filing of the petition in this case. On January 24, 1980, petitioner, a certified public accountant employed in the Loveland, Colorado area, purchased residential real property in that area for $ 55,650. A substantial portion of this purchase price was financed with a mortgage guaranteed by the Federal Housing Administration (FHA). Petitioner's parents, Raymond G. and Gladys E. Olson were residing in Sun City, California. For reasons relating to petitioner's job assignments and his parents' stated desire to move *376 to Colorado, petitioner, on April 22, 1981, sold the Loveland property to his parents for $ 61,000. In connection with this sale, his parents assumed the FHA mortgage which then had a balance due of $ 49,778.35, and agreed to pay petitioner an additional $ 6,000, which amount was secured by a second deed of trust. All appropriate documents were duly recorded. Subsequent to April 22, 1981, petitioner's parents incurred expenses in remodeling the premises. Petitioner's parents never did sell their Sun City property nor move to Loveland. At no time did they reside in the Loveland premises. Petitioner's parents later decided that their purchase of the Loveland property was unwise. On December 21, 1982, petitioner's parents entered into an Agreement for Sale of Real Estate (installment land contract) wherein petitioner agreed to purchase the Loveland property for $ 67,500. The contract provided for a down payment of $ 16,237, and petitioner agreed to pay the balance of $ 51,263, plus interest at the rate of 11 and one-half percent per annum in monthly installments of $ 429.87 commencing January 1, 1983. The installment land contract was never recorded by petitioner or petitioner's *377 parents. Petitioner's parents are still liable on the FHA guaranteed loan. When his parents assumed the FHA loan in 1981, petitioner had remained secondarily liable thereon. Accordingly, there was no need for petitioner to reassume that obligation. Subsequent to December 21, 1982, petitioner arranged to have the property managed by Estate Builder Realty, and the property started being rented to third parties. In 1985, the year before the Court, petitioner received gross rents of $ 5,905. Petitioner made all of the mortgage payments directly to the mortgage corporation and, in addition, reimbursed the property manager for various expenses incurred. Petitioner's parents received no income from the property and paid no expenses with regard to the property. For purposes on Federal income taxation, a sale occurs upon the transfer of benefits and burdens of ownership, rather than upon the satisfaction of the technical requirements for the passage of title under State law. Derr v. Commissioner, 77 T.C. 708, 723-724 (1981); Yelencsics v. Commissioner, 74 T.C. 1513, 1527 (1980). The question of when a sale is complete for Federal income tax *378 purposes is essentially one of fact. Baird v. Commissioner, 68 T.C. 115, 124 (1977). The applicable test is a practical one which considers all of the facts and circumstances, with no single fact controlling the outcome. Derr v. Commissioner, supra at 724; Baird v. Commissioner, supra at 124; Deyoe v. Commissioner, 66 T.C. 904, 910 (1976). Generally, a sale of real property is complete upon the earlier of the transfer of legal title or the practical assumption of the benefits and burdens of ownership. Derr v. Commissioner, supra at 724; Baird v. Commissioner, supra at 124; Deyoe v. Commissioner, supra at 910. If the passage of title is delayed to secure payment of the purchase price, the sale will be complete upon the acquisition of the benefits and burdens of ownership by the purchaser. Deyoe v. Commissioner, supra at 910; Merrill v. Commissioner40 T.C. 66, 76 (1963), affd. per curiam 336 F.2d 771 (9th Cir. 1964). We hold that petitioner entered into a valid, *379 binding contract to purchase the Loveland property from his parents. As a result, petitioner succeeded to the benefits of ownership, while being responsible for the burdens. Under the legal concept of equitable conversion, all rights to the property were transferred to petitioner, subject to the retention of legal title by his parents for security purposes. Respondent contends that the installment land contract should be disregarded as petitioner has failed to demonstrate that he complied with its terms insofar particularly with regard to making the down payment. Petitioner has attempted to reconstruct his 1982 records, and the Court is satisfied that most, if not all, of the down payment is accounted for. Part of that down payment was to be petitioner's forgiveness of the $ 6,000 note, and petitioner's father testified that petitioner did return that note to him. In any event, that is a matter that is between the contracting parties, and does not detract from the validity of the contract. In addition, respondent contends that the contract is a sham because the parents did not report the 1982 sale on their tax return. Petitioner's father testified that he merely forgot and *380 that no tax was probably due because of the improvements made. We are not persuaded to invalidate the contract because of the failure to report. Whether the parents owe additional tax is a matter between between respondent and the parents. The fact that the installment land contract was not recorded does not detract from its validity. Under Colo. Rev. Stat. sec. 38-35-109 (1982), an unrecorded document is invalid against any class of persons with any kind of rights, except between the parties thereto and such that have notice thereof. We conclude that petitioner was the owner of the property for tax purposes in 1985, and is entitled to the deductions claimed on his 1985 return in regard thereto. To reflect the above, Decision will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩