CASHION, INC., FORMERLY CASHION OIL COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; PAUL L. CASHION and MARY E. CASHION, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
CASHION, INC. v. COMMISSIONER
Docket Nos. 8536-76, 8537-76.
United States Tax Court
T.C. Memo 1978-466; 1978 Tax Ct. Memo LEXIS 49; 37 T.C.M. (CCH) 1847-96; November 22, 1978, Filed *49 In 1968, A and B transferred certain developed properties to X corporation in exchange for certain mountain properties. However, neither party realized that the deed from X to A and B mistakenly omitted 82.2 acres. In 1970, A and B conveyed an undivided two-thirds interest in the entire mountain properties to C and D. In 1973, A, B, C, and D sold such mountain properties to M, who subsequently discovered that X still held record title to the omitted 82.2 acres. At M's request, X deeded the 82.2 acres to A and B. Held, under the facts of this case, A and B, and not X, owned the 82.2 acres when it was sold to M in 1973. Eric Davis, for the petitioners. Eric B. Jorgensen, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency in the individual petitioners' Federal income tax for 1973 of $4,868.95 and a deficiency in the corporate petitioner's Federal income tax for 1973 of $5,828.24. The only issue for decision is which of the petitioners owned an 82.2-acre tract of land when it was sold to a third party in 1973. FINDINGS OF FACT Some of the facts have been stipulated, *50 and those facts are so found. The petitioners, Paul L. Cashion and Mary E. Cashion, husband and wife, maintained their legal residence in Wilkesboro, N.C., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1973 with the Internal Revenue Service Center, Memphis, Tenn. During 1973, they maintained their books and records by use of the cash method of accounting. The petitioner, Cashion, Inc., formerly Cashion Oil Company, Inc. (the corporation), had its principal place of business in North Wilkesboro, N.C., at the time it filed its petition in this case. It filed its Federal corporate income tax return for 1973 with the Internal Revenue Service Center, Memphis, Tenn. From 1963 through 1973, the corporation maintained its books and records by use of the accrual method of accounting. On February 8, 1947, the corporation, which is engaged in the gasoline and heating oil business, was incorporated under the laws of the State of North Carolina. From January 1, 1963 to August 27, 1973, Mr. Cashion owned all of its issued and outstanding stock. On August 27, 1973, the corporation issued 10 additional shares of its stock to *51 Mrs. Cashion. On November 30, 1964, the corporation purchased 82.2 acres of land at a judicial auction for $660. In connection with such transaction, it incurred legal fees of $100 and recording fees of $15. Because of its method of accounting, the corporation did not record the transaction on its books and records until January 1965 when its deed was recorded; at that time, its cost basis in the 82.2 acres of $775 was also recorded in its books and records. The 82.2 acres is inaccessible mountain timberland located "back in the boondocks of Wilkes County," N.C. By mid-1968, the corporation had acquired other mountain land contiguous to such tract. Sometime prior to July 1, 1968, the petitioners decided to exchange certain real estate. They instructed their legal representative to draw up deeds conveying all of the mountain land, including the 82.2-acre tract, from the corporation to the Cashions in exchange for the Cashions transferring some of their business property to the corporation. On July 1, 1968, the petitioners effected the exchange of properties (1968 exchange), except that unknown to them, the draftsmen of the deed failed to include the 82.2 acres in the description *52 of the properties conveyed from the corporation to the Cashions. Later, in connection with the preparation of their 1968 tax returns, the petitioners informed their accountant that the corporation had exchanged all of its mountain land, including the 82.2 acres, for other business properties of the Cashions. In preparing the petitioners' 1968 tax returns, the accountant assumed that the Cashions owned the 82.2 acres. On January 15, 1970, the Cashions sold a three-fourths undivided interest in approximately 2,000 acres of land to Charles R. Sullivan, Julian H. Wright, and Allen P. Johnson. The 82.2 acres in issue was not part of such sale. On June 6, 1970, the Cashions sold an undivided two-thirds interest in 347.5 acres of mountain timberland to Thomas W. and Gretchen G. Matthews and Frederick L. and Elizabeth Stanley (1970 transaction). The 82.2 acres in issue herein was part of the 347.5 acres. On August 24, 1973, the Cashions, the Matthews, and the Stanleys sold the 347.5 acres of mountain timberland to Willard Naitove, in his capacity as trustee for certain unnamed third parties (1973 transaction). Mr. Naitove retained an attorney to abstract title to such land. During *53 the course of performing his duties, the attorney discovered that according to the Register of Deeds, Wilkes County, N.C., the corporation was the record owner of the 82.2 acres. He immediately relayed such information to Mr. Cashion, who was very surprised and told the attorney that the corporation had conveyed such land to him in 1968. However, the attorney's information was accurate, and to protect his client with an unbroken chain of recorded title, he insisted that the corporation record a deed in the Wilkes County Register of Deeds conveying the 82.2 acres to the Cashions. Accordingly, on September 6, 1973, the corporation executed a deed to the 82.2 acres to the Cashions, and such deed was recorded in the Register of Deeds, Wilkes County, on October 23, 1973.
In preparing the petitioners' tax returns for 1968, 1970, and 1973, the accountant examined the corporation's books and records for 1964 to find the basis of the 82.2 acres of mountain timberland; he assumed that any basis for such land should be included in the records for that year since the land was purchased in such year. However, since such basis was recorded in the books and records of 1965, he never discovered *54 such basis and never used it in any of the computations in preparing such returns. On their 1973 tax returns, the Cashions reported a gain on the sale of the mountain timberland to Mr. Naitove, and the corporation did not treat the execution of the deed to the Cashions as a taxable transaction.In his notice of deficiency, the Commissioner determined that in substance, the corporation sold the 82.2 acres to Mr. Naitove in a taxable transaction and then distributed the proceeds of the sale to the Cashions as a dividend. OPINION The only issue to be decided is whether the Cashions or the corporation owned the 82.2 acres of mountain timberland when it was sold to Mr. Naitove in 1973. Resolution of this issue depends on whether, for Federal income tax purposes, the Cashions became the owners of such land as a result of the 1968 exchange, notwithstanding that such land was mistakenly omitted from the deed from the corporation to them. The Commissioner argues that the corporation owned the 82.2-acre tract when it was sold to Mr. Naitove in 1973, and the petitioners argue that the Cashions owned it after the 1968 exchange. The question of when a sale or exchange is complete--or *55 who owns property--for Federal income tax purposes is essentially a question of fact to be resolved by a consideration of all the surrounding facts and circumstances. Tennessee Natural Gas Lines, Inc. v. Commissioner, 71 T.C.    ,     (Oct. 30, 1978); Baird v. Commissioner,68 T.C. 115, 124 (1977); Deyoe v. Commissioner,66 T.C. 904, 910 (1976); Harmston v. Commissioner,61 T.C. 216, 228 (1973), affd. per curiam 528 F. 2d 55 (9th Cir. 1976). Among the factors generally considered are the transfer of legal title and the shifting of the benefits and burdens of ownership of the property, and when such factors do not occur simultaneously, the courts place a special emphasis on the one that occurs first. Dettmers v. Commissioner,430 F. 2d 1019, 1023 (6th Cir. 1970), affg. Estate of Johnston v. Commissioner,51 T.C. 290 (1968); Tennessee Natural Gas Lines, Inc. v. Commissioner,supra; Baird v. Commissioner,supra;Deyoe v. Commissioner,supra;Harmston v. Commissioner,supra.However, it must be kept in *56 mind that: There are no hard and fast rules of thumb that can be used in determining, for taxation purposes, when a sale was consummated, and no single factor is controlling; the transaction must be viewed as a whole and in the light of realism and practicality. * * * [Commissioner v. Segall,114 F. 2d 706, 709 (6th Cir. 1940), revg. on other grounds 38 B.T.A. 43 (1938), cert. denied 313 U.S. 562 (1941).] Based upon the evidence in this record, we conclude that the benefits and burdens of ownership of the 82.2 acres passed to the Cashions in 1968. The petitioners presented persuasive evidence in support of their position. Mr. Cashion testified that the petitioners intended to include the 82.2-acre tract in the 1968 exchange and that as far as he knew, such land had been so included until the attorney informed him otherwise in 1973. Mr. Cashion explained that the 82.2 acres was part of a larger tract of mountain timberland owned by him, that it was located in a remote area in Wilkes County, N.C., and that it was impossible from the description in the deed to know that the 82.2 acres had been omitted "because the old chestnut stump *57 and pine trees and piles of rocks, as described in these old deeds, are no longer in existence." Believing that the 82.2 acres had been conveyed to them in the 1968 exchange, the Cashions assumed the burdens of ownership. For example, Mr. Cashion testified that he paid all of the real estate and income taxes incident to such ownership, and the accountant testified that he prepared the petitioners' tax returns for 1968, 1970, and 1973 assuming that the Cashions acquired the 82.2 acres as a result of the 1968 exchange. In addition, and most importantly, the Cashions assumed the benefits of owning the land. In 1970, they sold a two-thirds undivided interest in a larger tract of mountain timberland which included the 82.2 acres to the Matthews and Stanleys. Later, in 1973, such mountain timberland was sold by the Cashions, the Matthews, and the Stanleys to Mr. Naitove. The Cashions were completely unaware of the mistake until the attorney abstracted title to the land in connection with the 1973 transaction and informed them that, according to the Register of Deeds, record title was held by the corporation. The corporation deeded the land to the Cashions in 1973, and such deed was *58 duly recorded because the attorney insisted, for the protection of his client, that the official records in the Wilkes County Register of Deeds establish that his client acquired title to the 82.2 acres through an unbroken chain. The Commissioner asks us to ignore all of this uncontroverted evidence and to reach his conclusion based on the accountant's failure to consider the corporation's $775 basis in the 82.2 acres in making various computations, the Commissioner's interpretation of certain Wilkes County real estate tax listings, and certain allegations in the petitions in this case which are inconsistent with the petitioners' position at trial. However, we are not persuaded by any of these circumstances. The accountant explained that he did not include the $775 basis of the 82.2 acres when he computed the basis of the property acquired by the petitioners in 1968 because he examined only the records of the corporation for 1964, the year in which it acquired the 82.2 acres, and because the basis of such property was not shown in the records of the corporation for that year. We found such explanation to be reasonable under the circumstances, and the Commissioner has given *59 us no reason to disbelieve it.As to the Wilkes County real estate tax records, we disagree with the Commissioner's conclusion that they establish that the corporation paid the property tax on the 82.2 acres from 1964 onward. Though the tax records are confusing, we find the accountant's explanation of the lisings to be far more persuasive; he suggested that the 82.2 acres was listed in the name of the corporation prior to 1969, that in 1969, the 82.2 acres became merged in larger tracts of land so that from the listings, it was impossible to tell who paid the tax, and that after 1969, the 82.2 acres was listed in the name of the Cashions as part of a 386.55-acre tract. In any event, Mr. Cashion testified that he paid the property tax on the 82.2 acres after the 1968 exchange. Finally, the Commissioner argues that the petitioners lack credibility because their position at and after the trial is inconsistent with the position they took during the administrative procedure and in their petitions. However, the only evidence presented by the Commissioner with respect to the petitioners' position during the administrative procedure is a letter by the accountant, and such letter appears *60 to be consistent with the petitioners' current position. In their petitions, they alleged that the 82.2 acres was included in the 1968 exchange and that it was part of the 2,000-acre transaction with Mr. Sullivan, Mr. Wright, and Mr. Johnson. Though the proof at trial was not entirely consistent with the allegations in the petitions, we think that such factor alone is insufficient to seriously damage the petitioners' credibility; rather, we are convinced that the 82.2 acres was intended to be included in the 1968 exchange, that the petitioners consistently treated the Cashions as owning the property, that the inconsistency between the petitions and the proof was probably attributable to a general confusion about what property was described in the various deeds, and that such confusion was properly cleared up at the trial. Accordingly, Decisions will be entered for the petitioners.