ROBERT C. DIVELY AND LINDA L. DIVELY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dively v. Commissioner
Docket No. 5446-92
United States Tax Court
T.C. Memo 1993-395; 1993 Tax Ct. Memo LEXIS 410; 66 T.C.M. (CCH) 557; August 30, 1993, Filed *410 Decision will be entered for respondent. For petitioners: C. Richard Davis. For respondent: Deborah C. Stanley. KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By statutory notice of deficiency dated December 11, 1991, respondent determined with respect to petitioners' 1987 and 1988 Federal income tax returns deficiencies and additions to tax in the following amounts: Additions to Tax Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
1987
$ 14,080
--
$ 704 *
1988
13,204
$ 660
--
--
* 50 percent of the interest due on the underpayment.
Following concessions by petitioners, the remaining issues for decision are whether respondent erred in disallowing petitioners' itemized deductions for mortgage interest and real estate taxes for 1987 and 1988. [1]
*411 All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and its accompanying exhibits are incorporated herein by this reference. Robert C. and Linda L. Dively, husband and wife, have resided in a house located at 105 William Allen, Williamsburg, Virginia, since 1982, including the date on which the petition in this case was filed. Petitioners are cash basis taxpayers. Petitioner when used in this opinion shall refer to Robert C. Dively. The above-mentioned house was built by a contractor named Ron Curtis (Curtis). In September 1982, petitioners and Curtis executed a written lease-purchase agreement for the house. The terms of the agreement included a purchase price of $ 145,000, a downpayment of $ 1,000, and $ 1,000 per month for 6 months. According to the terms of the agreement, these payments were to be applied to the purchase price. Petitioners made these payments, and the amount due at the termination of the lease-purchase agreement, in *412 February 1983, was $ 138,000. Petitioners, however, were unable to obtain financing at that time to complete the purchase of the house; the written lease-purchase agreement was not fulfilled. After February 1983, petitioners remained in the house pursuant to an oral agreement with Curtis. They did not hold legal title to the house during the years at issue. In 1987, petitioners made eight payments of $ 1,450 to Curtis, and three payments involving larger amounts. Annotations on three of the checks indicated that they were for rent; one of these checks was further annotated "4th quarter $ 144, taxes $ 640.57". In 1988, petitioner made six payments of $ 1,450 and one payment of $ 1,570 to Curtis. On their joint income tax return for 1987, petitioners claimed deductions for real estate taxes in the amount of $ 1,172 and mortgage interest in the amount of $ 5,400. On their joint income tax return for 1988, petitioners deducted $ 1,281 and $ 18,000 for real estate taxes and mortgage interest, respectively. Respondent disallowed the aforementioned deductions. OPINION The issues we must decide are whether petitioners are entitled to deductions for qualified residence interest *413 under section 163 and for real estate taxes under section 164 in 1987 and 1988. A taxpayer is allowed a deduction for qualified residence interest for the years at issue. Sec. 163(h)(2)(D). Qualified residence interest, for purposes of petitioners' 1988 taxable year, is defined, in relevant part, to include any interest which is paid during the taxable year on "any indebtedness which was incurred on or before October 13, 1987, and which was secured by a qualified residence on October 13, 1987, and at all times thereafter before the interest is paid". [2]Sec. 163(h)(3)(A), (D)(i), (iii)(I). [3]
*414 Qualified residence means a taxpayer's principal residence or a second residence.[4]Sec. 163(h)(4)(A)(i); [5]sec. 1.163-10T(p)(1), Temporary Income Tax Regs., 52 Fed. Reg. 48418 (Dec. 22, 1987). Principal residence as used in section 163(h) has the same meaning as a taxpayer's principal residence for purposes of section 1034. Sec. 163(h)(4)(A)(i)(I); [6]sec. 1.163-10T(p)(2), Temporary Income Tax Regs., 52 Fed. Reg. 48418 (Dec. 22, 1987).
Petitioners have the burden to prove that they are entitled to claim qualified residence interest for the years at issue. Rule 142(a). There is no dispute that the house qualifies as petitioners' principal residence. This case turns on whether petitioners are considered *415 to be the owners of the house. A sale of real property for tax purposes is considered to have occurred on the earlier of the transfer of legal title or the shift of the benefits and burdens of ownership. Baird v. Commissioner, 68 T.C. 115, 124-125 (1977); Deyoe v. Commissioner, 66 T.C. 904, 910 (1976). Petitioners concede that they did not have legal title to the house during the years at issue. Instead, they assert that they were the equitable owners of the house pursuant to an oral purchase agreement with Curtis and, accordingly, are entitled to deduct interest on indebtedness related to its acquisition. [7]
Although Federal law determines which interest or right shall be taxed, State law determines the nature of the interests and rights in property. Morgan v. Commissioner, 309 U.S. 78 (1940). *416 The oral agreement under which petitioners allegedly acquired the house must not have been unenforceable by reason of the application of the Virginia statute of frauds. Cf. Russell v. Commissioner, 40 T.C. 810, 821 (1963), affd. 345 F.2d 534 (5th Cir. 1965); Nixon v. Commissioner, T.C. Memo. 1987-318; Heim v. Commissioner, T.C. Memo. 1987-1. Under the Virginia statute of frauds, an agreement to sell realty, to be enforceable, must be reflected in a written memorandum. This statute in pertinent part reads: Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases: * * * 6. Upon any contract for the sale of real estate * * * [Va. Code Ann. sec. 11-2 (Michie 1993).]
A parol contract to convey realty may be enforced as a consequence of partial performance notwithstanding the statute of frauds, if the following conditions are satisfied: (1) The parol agreement relied on *417 must be certain and definite in its terms. (2) The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. (3) The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation. [Taylor v. Hopkins, 84 S.E. 2d 430, 432 (1954) (quoting Wright v. Pucket, 63 Va. (22 Gratt.) 370, 374 (1872)).]
Furthermore, the evidence relied upon to establish the parol contract must be clear and convincing. Taylor v. Hopkins, supra.
Petitioners assert that they were the equitable owners of the house since the oral agreement they had with Curtis to acquire it was enforceable. They claim that their performance under the terms of the oral agreement takes the transaction out of the operation of the statute of frauds. Further, since they were the equitable owners of the house, they claim they were entitled to deduct interest attributable to the outstanding balance of the debt they incurred in acquiring the house from Curtis, as well as *418 the real estate taxes on the property. Although in Virginia partial performance of an oral agreement to sell real property may take the transaction out of the statute of frauds, we find that petitioners have failed to establish by clear and convincing evidence the existence of an oral agreement with certain and definite terms that related to acquisition of the house. Petitioners' contention that they had an enforceable oral agreement to acquire the house rests on their testimony and a few exhibits consisting primarily of a number of checks issued to Curtis in 1987 and 1988. Petitioners testified that following the termination, in February 1983, of the written lease-purchase agreement they had on the house, Curtis orally agreed to sell it to them. According to petitioners' testimony, the monthly payments were increased to $ 1,450, and closing was to occur when they obtained financing. Petitioner testified that, pursuant to the terms of this agreement, the interest rate was the prime rate plus 2 percent, and if the amount of interest so calculated exceeded or was less than petitioners' monthly payment of $ 1,450 the purchase price would be adjusted to reflect this difference. *419 Petitioner also claimed that petitioners were liable for the real estate taxes due on the property and for a local homeowners association fee. Petitioners support their argument by noting that they have lived in the house continuously since 1982 and that they have consistently made monthly payments to Curtis in amounts equal to or exceeding $ 1,450 since February 1983, including in 1987 and 1988. Petitioners' testimony also included assertions that they had made $ 40,000 worth of improvements to the house, and that comparable houses were renting for $ 600 around February 1983 and $ 775 during the years at issue. The record clearly shows that petitioners had an agreement with Curtis to occupy the house, but it does not clearly and convincingly establish that the oral agreement involved its sale. First, there was evidence in the record that was patently inconsistent with petitioners' contention that the agreement concerned the sale of the house and not a lease of the premises. Some of petitioners' checks offered as evidence of payment to Curtis had annotations indicating they were payments of rent. Second, no reason was offered as to why the agreement to acquire the residence was *420 not in writing, although the prior lease-purchase agreement was. Third, other documentation relating to the alleged transaction that was offered into evidence provides little support for petitioners' contention that they had equitable title to the house, but instead raises further questions. Petitioners did have an amortization table prepared, which is in evidence, relating to the alleged oral agreement. However, they did not acquire this table until 4 months prior to trial; the record does not include any other tables that one would have expected to have been prepared in prior years. In determining the amount of qualified residence interest to which they were entitled in 1987 and 1988, petitioner did not rely on an amortization table. Instead, they very roughly approximated the amount of the alleged qualified residence interest they paid on the house. In 1987, they claimed $ 5,400 in mortgage interest, when petitioners, according to their testimony, should have deducted $ 12,000. [8] For 1988, they claimed a mortgage interest deduction of $ 18,000, which exceeds the yearly total of the monthly payments they were obligated to pay Curtis under the alleged purchase agreement. [9] *421 Also in evidence is a letter petitioner allegedly sent to Curtis regarding a discussion they allegedly had in November 1992 about the terms of the oral agreement. This letter does not serve to corroborate petitioners' testimony, since it does not indicate that it was ever received or acknowledged by Curtis; it merely reiterates such testimony in a different medium. The largest defect in petitioners' case, given the aforementioned concerns, is that the record, outside of petitioners' testimony, is silent as to Curtis' impression of their alleged oral agreement regarding the sale of the house. Curtis did not testify, although petitioners' *422 pretrial memorandum stated that he would be called as a witness; [10] *423 nor does the record include any documentary evidence indicating that Curtis considered petitioners the owners of the house. "Failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We note in this regard that petitioner was not naive or inexperienced in business or legal matters, [11] so that it would have been reasonable to expect that he would have had further written corroborating evidence that reflected petitioners' interest in the house, if petitioners had not reduced the oral agreement to writing by the time of trial. [12]
Finally, the record does not establish what the terms of the agreement were. Petitioner testified *424 that he had spoken to Curtis in November 1992 about determining the amount of principal that allegedly remained outstanding. Petitioner testified that Curtis had disagreed with the amount petitioner calculated was due, since the figure failed to include certain expenses -- insurance and fees related to the loan Curtis had taken out to construct the house. He also testified that by the time of this trial, nearly 4 months later, this matter had not been formally resolved. Given petitioners' almost entire reliance on their oral testimony to establish their ownership of the house, the nearly complete lack of corroboration thereof, and the questions about the transaction that arise from or remain unanswered by the record, we find that petitioners have not carried their burden to show that they had an oral agreement to acquire the house that fell outside the operation of the Virginia statute of frauds through partial performance, and, thus, that they were the owners of the house. Accordingly, respondent's determination disallowing petitioners' mortgage interest deductions for the years at issue is sustained. [13]
*425 The next issue we must address is whether petitioners are entitled to deduct, for the years at issue, the amounts they claimed to have paid in local real property taxes assessed on the house. Section 164(a) allows a taxpayer to deduct State and local real property taxes. Real estate taxes normally are deductible only by the person upon whom they are imposed. Sec. 1.164-1(a), Income Tax Regs. Petitioners have the burden to prove that they are entitled to these deductions. Rule 142(a). Petitioners have not established that they were the owners of the house and, thus, that the real estate taxes had been imposed on them. Nor have they established the amount of such taxes, or that they paid them. Respondent's determination that petitioners are not entitled to deduct real estate taxes with respect to the house is sustained for each of the years at issue. Based on the foregoing, Decision will be entered for respondent. Footnotes
1. Respondent in the notice of deficiency disallowed deductions for contributions made to a Keogh plan taken in 1987 and 1988, disallowed a portion of capital losses claimed in 1988, and imposed additions to tax for negligence for both of the years at issue. Since these matters were not raised in the petition, they are deemed to have been conceded by petitioners. Rule 34(b)(4).↩
2. Petitioners assert that the indebtedness that they claim entitles them to qualified residence interest was incurred prior to October 13, 1987.↩
3. Qualified residence interest was defined differently for taxable years beginning after December 31, 1986, but before January 1, 1988. Sec. 163(h)(3)↩ (as in effect for that year). Even though this case involves both petitioners' 1987 taxable year and 1988 taxable year, the difference in the language defining qualified residence interest for each of these years is not material for purposes of this case, as our finding is that petitioners failed to establish that they had an enforceable oral agreement to acquire the house.
4. Petitioners do not claim that their house constituted a second residence; therefore, this basis for the qualified residence interest deduction is not addressed in the opinion.↩
5. Sec. 163(h)(5)(A)(i)↩ for 1987.
6. Sec. 163(h)(5)(A)(i)(I)↩ for 1987.
7. If petitioners were the equitable owners of the property, they would have acquired the benefits and burdens of ownership.↩
8. How petitioners derived this figure is not clear.↩
9. We note that petitioners had their tax returns for the years at issue prepared by a certified public accountant, from which fact it is reasonable to conclude that they would have been aware of the need to substantiate the mortgage interest deduction, and that an amortization table would have been prepared for this purpose.↩
10. Although petitioners moved at trial to have admitted into evidence at a later date an affidavit executed by Curtis in which it is alleged he would confirm that he considered petitioners the owners of the house, they provided no explanation as to why Curtis was not available to testify. The affidavit was not admitted. Fed. R. Evid. 801(c)↩.
11. Petitioner testified that he had gone through bankruptcy in 1986, that he had been unsuccessfully sued by a former business partner for $ 7 million, and that he had won a sizeable judgment for defamation against that same person. During the years at issue, petitioner's adjusted gross income was at least $ 150,000, derived primarily from a business in which he was actively involved. It is all the more surprising that the alleged purchase agreement was not in writing, since, according to petitioner, Curtis is a large builder, having constructed hundreds of houses.↩
12. Despite testifying that they had made substantial improvements to the house, petitioners provided no substantiation that they had been liable for the cost of these alleged improvements, such as receipts. They also testified that Curtis sent them the actual copy of the county real estate tax statement for the house, yet neither these statements nor any cover letter that might have accompanied them were ever offered into evidence.↩
13. Resolving this issue as we do, we need not address petitioners' argument regarding the validity of the requirement that the indebtedness from which qualified residence interest arises must be secured by the principal residence. Sec. 163(h)(3)(D)(iii)(I); sec. 1.163-10T(o)(1), Temporary Income Tax Regs., 52 Fed. Reg. 48417↩ (Dec. 22, 1987).